UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KAMALJIT SINGH PAUL, M.D.,

    Plaintiff,

v.                                                                               Case No. 05-C-0054

THEDA CLARK MEDICAL CENTER, INC.,

    Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Dr. Kamaljit Singh Paul brought this action against Defendant Theda Clark Medical Center, alleging that Theda Clark had denied him active staff membership on the basis of his race in violation of 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Dr. Paul also alleged that Theda Clark violated its own bylaws by denying him active staff membership. Theda Clark has moved for summary judgment on all Dr. Paul's claims. Plaintiff opposes the motion and has also filed a motion to enlarge the time for amending pleadings. For the following reasons, Theda Clark's motion will be granted and Dr. Paul's will be denied.

**BACKGROUND**

Dr. Paul was born in India and attended medical school in that country. He came to the United States in 1984 and established a neurosurgery practice in Oshkosh and Appleton, Wisconsin, in 1986. While Dr. Paul completed two years of neurotrauma fellowship upon his arrival in the

United States, he has never done a residency in neurosurgery in this country, and as a result he is not board-certified in neurosurgery by the American College of Neurosurgeons. (Paul Dep. at 12.)

From 1992 to 2003, Dr. Paul held an active staff membership at Theda Clark Medical Center. However, he did not actually perform surgery at Theda Clark during this time. In January of 2003, Dr. Paul applied for reappointment as an active staff member, anticipating that he would begin performing surgery there for insurance reasons. Theda Clark denied Dr. Paul active status and extended him courtesy status (meaning he was permitted only twenty patients at Theda Clark every two years) instead. Dr. Paul requested a hearing on the denial. Theda Clark's Hearing Committee held such a hearing on September 24, 2003, and upheld the denial. The Committee stated as its reason for doing so Dr. Paul's "inability to meet the requirements outlined in the Bylaws and the American College of Surgeons Gold Book to provide call coverage for Trauma and Pediatric patients at Theda Clark Medical Center." (Hickey Aff., Ex. B.) Specifically, Theda Clark maintained that because it is certified as a Level II trauma center by the American College of Surgeons, all its active neurosurgeons must be board-certified–which Dr. Paul is not. Having failed to convince Theda Clark to grant him active staff membership, Dr. Paul commenced this case.

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that

it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Dr. Paul presents no direct evidence of racial discrimination.[1] Nevertheless, Dr. Paul may still make out a prima facie case of racial discrimination by showing that (1) he belonged to a

---

[1] Dr. Paul states that a patient told him in 1994 or 1995 that a prominent Theda Clark doctor, since retired, told one of his patients that Dr. Paul "should go back [where] he has come from [and] take his camel." (Paul Dep. at 54.) This statement, however, is inadmissible hearsay. In addition, there is no showing that the doctor who allegedly made the statement was involved in the decision to deny Dr. Paul staff privileges. Thus, the statement would also be irrelevant. *See Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612-13 (7th Cir.2005) (concluding that a nondecisionmaker's comment that plaintiff "would probably be losing [his] job because [he] was a stupid Polack" was unrelated to plaintiff's termination).

3

protected class, (2) he sought and was qualified for active status, (3) he was denied active status, and (4) other similarly situated doctors were granted active status. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir. 1987) (applying *McDonnell Douglas* burden-shifting framework to claims under § 1981 and Title VI). If Dr. Paul makes out a prima facie case, the burden shifts to Theda Clark to present a legitimate reason for the adverse employment action. *Id.* "If [Theda Clark] presents no evidence in response [to Dr. Paul's prima facie showing, Theda Clark] is entitled to summary judgment. If [Theda Clark] presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise there must be a trial." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

The parties dispute whether Dr. Paul was qualified for active staff membership. While they agree that Dr. Paul lacks board certification, and that Theda Clark purported to deny him active staff membership for that reason, Dr. Paul claims that Theda Clark does not actually require board certification for active neurosurgeons, while Theda Clark maintains that it does. Thus, the question of whether Dr. Paul was qualified merges with the question of whether Theda Clark's reasons for denying him active staff membership are pretextual. *See Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002).

Dr. Paul has failed to establish that he was qualified for active staff membership and that Theda Clark's denial of such membership was pretextual. Dr. Paul argues that Theda Clark's bylaws contain a "grandfather clause" that exempts him from the requirement of board certification. The "grandfather clause," in as much context as the parties provide, reads as follows:

4

> [E]ach physician who has not previously held medical staff privileges at either the Theda Clark campus or the AMC campus of THEDACARE, who initially applies for clinical privileges pursuant to Article VI, Section 1, hereof must be: (i) Board certified, or (ii) eligible or qualified for Board certification at the time of initial appointment and must become Board certified in his/her practice area within five (5) years after the initial request for clinical privileges. Certification required under this provision must be granted by a board recognized by the American Board of Medical Specialties. *Applicants who previously held medical staff privileges at a campus of THEDACARE must have a minimum of five (5) years experience in the applicable specialty or specialties and satisfy the minimum training and competency guidelines established by the appropriate clinical department and the credentials committee, and approved by the executive committee.*

(Nell Aff., Ex. F at 20; emphasis added.) Theda Clark claims that this section of the bylaws applies to "clinical privileges" rather than to "active staff membership." (Reply at 3-8.) Neither party has seen fit to provide the court with a full copy of the bylaws, and the court thus cannot determine the difference between the two.

Nevertheless, even the quoted section of the bylaws requires applicants to "satisfy the minimum training and competency guidelines established by the appropriate clinical department and the credentials committee, and approved by the executive committee." If Theda Clark imposed a requirement of board certification on neurosurgeons seeking active staff membership, it makes no difference for purposes of § 1981 and Title VI whether that requirement was clearly stated in the bylaws. "To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision. Instead, the plaintiff must demonstrate that the employer's reason is unworthy of belief." *Koski v. Standex Intern. Corp.*, 307 F.3d 672, 677 (7th Cir. 2002); *see also Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997) ("[I]f the [defendant] honestly believed in [its] reasons, the plaintiff loses even if the reasons are foolish or trivial or even baseless."). It is

5

worth noting in this context that Dr. Paul has identified only one neurosurgeon who has ever been granted active staff membership without board certification–himself prior to 2003.[2] This fact demonstrates that Dr. Paul was, if anything, treated more favorably than other neurosurgeons.[3] Because Dr. Paul has failed to show that he was qualified for active staff membership and that Theda Clark's reason for denying him active staff membership is pretextual, Theda Clark is entitled to summary judgment on his § 1981 and Title VI claims.

Dr. Paul also argues that Theda Clark violated its bylaws in denying him active staff membership. He cites *Seitzinger v. Community Health Network*, 676 N.W.2d 426, 433 (Wis. 2004), and *Bass v. Ambrosius*, 520 N.W.2d 625, 627 (Wis. Ct. App. 1994), in support of the proposition that a hospital's bylaws may constitute a binding contract between the hospital and its doctors. While that is true, Dr. Paul has identified nothing in Theda Clark's bylaws that required Theda Clark to grant him active staff membership. At most, he has established that the bylaws did not forbid Theda Clark to grant him such membership. A contract does not require everything it does not forbid. Because Dr. Paul cannot establish a breach of contract, Theda Clark is entitled to summary judgment on his contract claims.

---

[2] The only non-board-certified doctor that Dr. Paul identifies as having been granted active staff membership is Dr. Behrens, an anesthesiologist. (Garrett Dep. at 83.) The Gold Book states that board certification is "essential" for neurosurgeons but merely "desirable" for anesthesiologists. (Hickey Suppl. Aff. at 5.)

[3] The record is unclear as to why, in light of the fact he was not board-certified, Dr. Paul was allowed to remain on the active medical staff at Theda Clark after it was certified as a Level II Trauma Center in 1998. The record suggests he did not use his staff privileges at Theda Clark before then and thus it may have made no difference to the hospital whether he was considered active medical staff or courtesy medical staff. In any event, Dr. Paul has failed to demonstrate that he was qualified for the active medical staff or that the hospital's decision not to reappoint him was pretextual.

6

Finally, Dr. Paul has moved for an extension of the time to file amended pleadings. In the affidavit supporting the motion, counsel states that the reason for an extension would be to permit the filing of an amended complaint naming Appleton Medical Center as an additional defendant. Counsel avers that the court's Scheduling Order of March 15, 2005, set a deadline of April15, 2005, for the filing of amended pleadings and a deadline of September 1, 2005, for the filing of dispositive motions.[4] Dr. Paul did not move for an extension of the amended pleadings deadline until September 28, 2005.

Fed. R. Civ. P. 16(b) permits the court to modify its scheduling orders only upon a showing of good cause. The court would not allow Dr. Paul to file amended pleadings after Theda Clark has filed a motion for summary judgment. *Cf. Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861-862 (7th Cir. 2001) (holding that district court may deny leave to amend after summary judgment motion has been filed on grounds of undue delay). Accordingly, no cause exists to modify the scheduling order, and Dr. Paul's motion will be denied.

**IT IS THEREFORE ORDERED** that plaintiff's motion to enlarge time for amending pleadings to add a necessary party (Docket #25) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Docket #19) is **GRANTED.** The clerk of court shall enter judgment accordingly.

Dated this   20th   day of December, 2005.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge

---

[4]Theda Clark filed its motion for summary judgment on August 29, 2005.

7